UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MAXIMILIANO SILEONI,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>LIEUTENANT HUSK, NURSE GARRETT USSERY, NURSE DALLAS, NURSE TAYLOR, NURSE CANO, NURSE McLEAN, NURSE ZUKARTIS, NURSE COON, and DR. BLACK,<br><br>　　　　　Defendants. | Case No. 1:21-cv-00007-BLW<br><br>**THIRD REVIEW ORDER** |

Pursuant to the Successive Review Order, Plaintiff Maximiliano Sileoni filed a Second Amended Complaint bringing lack of medical treatment claims against Lieutenant Husk; Nurses Ussery, Dallas, Taylor, Cano, McLean, Zukartis, and Coon; and Dr. Black. Dkt. 12. Having reviewed the Second Amended Complaint, the Court has determined that a Martinez report would be helpful to aid the Court in its final determination of whether Plaintiff has stated any viable claim.

REVIEW OF SECOND AMENDED COMPLAINT

1. **Standard of Law for Review of Complaint**

The Court is required to review prisoner complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915. The Court must dismiss a

**THIRD REVIEW ORDER - 1**

complaint or any portion thereof that states a claim that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

A complaint should also be dismissed under Rule 8 of the Federal Rules of Civil Procedure if the factual assertions in the Complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," the complaint has not stated a claim for relief that is plausible on its face. *Id.* (internal quotation marks omitted).

To state a claim under the Eighth Amendment regarding prison conditions or inadequate medical care, a plaintiff must provide facts alleging that he is incarcerated "under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citation omitted). A plaintiff must also state facts alleging that the defendants were deliberately indifferent to the plaintiff's needs. Deliberate indifference exists when an official knows of and disregards an unconstitutional condition; or when the official is aware of facts from which the inference could be drawn

**THIRD REVIEW ORDER - 2**

that a risk of harm or violation exists, and actually draws the inference. *Id.,* 511 U.S. at 837.

For claims of inadequate medical care, a plaintiff must allege facts showing that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). The Supreme Court has opined that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to a constitutional violation only if those needs are 'serious.'" *Id.*

The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain; . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

### 2. Discussion of Allegations of Untreated Chest Pain

Plaintiff states that he had chest pain in 2019 and 2020, and Nurses Dallas, Taylor, McLean, and Zukartis failed to treat him. Some nurses failed to stop to treat his chest pain while performing their pill call duties among the cells in his unit. Nurse Zukartis responded to an emergency call light in his cell and told him he likely had heartburn and should get an appointment to see a doctor for that condition. Plaintiff states that he also

**THIRD REVIEW ORDER - 3**

received treatment for chest pain by other nurses when he pressed his call button, including Nurse Tulburt (who is not a defendant here).

Plaintiff has not sufficiently alleged that he was suffering from a serious medical condition that demanded immediate care regarding his chest pain. Many people suffer from heartburn or other similar digestive symptoms manifesting as chest pain. Plaintiff did not suffer serious harm related to his allegations, and he points to nothing in his medical records that supports his claim that his chest pain was a serious medical condition that demanded immediate treatment. Plaintiff may not proceed on these claims based on the current allegations.

3. Discussions of Allegations of Failure to Treat Self-Inflicted Wounds

Plaintiff intentionally cut his penis three times in one week while in the Idaho State Correctional Center's suicide watch cell. He asserts that Lieutenant Husk asked to see the cut, and, after viewing it, told the nurse not to provide treatment to Plaintiff immediately. Correctional Officer Dean agreed the cut did not need emergency treatment. Nurse Garrett Ussery came to his cell and viewed the cut, and then walked away. Plaintiff states that he received treatment for his penis from Dr. Celedon and a male nurse. Plaintiff also received bacitracin ointment to prevent infection from an unidentified nurse in the infirmary.

Plaintiff does not provide sufficient facts showing that he had a serious medical need when the correctional officers and nurses viewed his self-inflicted penis wound and did not authorize or give him immediate treatment. He received treatment and anti-infection ointment from other medical staff. Plaintiff does not allege that he suffered any

**THIRD REVIEW ORDER - 4**

permanent harm or that his penis did not function as a result of the cuts he made. Plaintiff will not be permitted to proceed on these allegations on the current record.

4. Discussion of Rash and Skin Treatment

Plaintiff asserts that, on or about May 24, 2019, Nurse Cano failed to provide treatment for a rash on his whole body. When he complained, he was told to sign up for sick call. Plaintiff states that, from the beginning of his imprisonment, he has had a rash that looks like hive and comes and goes. From time to time he has been given cortisone cream to treat the condition. Plaintiff says that *at times* he suffers from burning pain; he also says that the burning pain is *constant*. Plaintiff alleges that, because his "burning pain was not visible [he] did not get any treatment on multiple occasion[s] by multiple sick call nurse[s]." *See* Dkt. 14. Plaintiff speculates that he may have shingles.

Plaintiff does not provide sufficient facts showing that he had a serious medical need with his on-again, off-again rash that medical providers sometimes treat with cortisone. Plaintiff does not provide facts showing that he should be given treatment for "burning pain" during the time frames when his rash is not visible. He has had access to his medical records, but provides no evidence that he has shingles or a serious skin condition that requires treatment other than with cortisone from time to time when the rash is visible. Plaintiff cannot proceed on his current allegations.

5. Discussion of Multiple Attempt to Draw Blood

Plaintiff asserts that Nurse Coon made multiple attempts to try to draw blood from his arm, because she kept on missing the vein. Plaintiff asserts that he started to have

chest pain and shortness of breath during the procedure, and that he later had arm pain and bruising for a week.

There are no allegations that amount to deliberate indifference. Blood draws can sometimes be difficult—for many common reasons. Plaintiff had natural, nonserious reactions to the needle pricks. There is nothing in the record to suggest that Nurse Coon intentionally hurt Plaintiff, and especially not for the reasons that Plaintiff suggests—out of retaliation for allegations that he assaulted female medical personnel. This claim fails to state plausible facts that Plaintiff suffered an injury that a reasonable doctor or patient would find important and worthy of comment or treatment.

6. **Discussion of Allegations regarding Testicle Pain and Hernia**

Plaintiff alleges that in 2018 and 2019, Dr. Black failed to treat him for testicular pain and a hernia. However, Plaintiff was treated for these medical conditions by many other Corizon providers during this same time. In fact, Plaintiff has already litigated testicular pain and hernia claims from this same time period to completion against other Corizon providers in Case No. 1:19-cv-0427-BLW. Even though Dr. Black was not a defendant in that action, nothing in Plaintiff's set of medical records covering the time period in question in that case showed that any provider had been deliberately indifferent regarding his testicle pain or hernia complaints. *See* Order at Dkt. 96 in that case.

Plaintiff asserts, without factual support, that Dr. Black refused to treat him because of "discrimination" and "harassment of being a sexual predator." Dkt. 14, p. 29. There are no plausible allegations to show that Dr. Black had any such motive or otherwise acted with deliberate indifference. Plaintiff cannot proceed on this claim on the

**THIRD REVIEW ORDER - 6**

allegations in the Second Amended Complaint for failure to state plausible deliberate indifference allegations and for failure to state that he suffered any injury from not being treated by Dr. Black—because during that same time period, he was treated for the same complaints by multiple Corizon providers.

7. **Conclusion**

Plaintiff's claims against Defendants Husk, Garrett Ussery, Nurse Dallas, Nurse Taylor, Nurse McLean, and Nurse Zukartis do not seem serious enough to state a claim for relief. However, out of an abundance of caution, the Court will request that counsel for the medical defendants file a brief Martinez report and medical records supporting the report within 120 days after entry of this Order, addressing the medical claims that Plaintiff's penis injuries, chest pain, and rash were not properly treated by Corizon staff. Plaintiff may file a brief response thereafter, and the Court will issue another screening order. Plaintiff is on notice that the Court intends to dismiss his claims for failure to state a claim upon which relief can be granted unless something in the medical records shows that Plaintiff had a serious medical condition for which he was denied treatment. Defendants need not, but may, address claims against Nurse Cano and Dr. Black in the Martinez report.

**ORDER**

**IT IS ORDERED:**

1. Plaintiff's Motion to File Second Amended Complaint (Dkt. 13) is GRANTED.
2. The Clerk of Court shall serve, via the ECF system, a copy of this Order and Plaintiff's Second Amended Complaint (Dkt. 14), on the following counsel on

**THIRD REVIEW ORDER - 7**

behalf of the medical defendants: **Kevin West and Dylan Eaton**, Parsons Behle & Latimer, 800 W. Main Street, Suite 1300, Boise, Idaho, 83702.

3. The Clerk need not send a waiver of service of summons at this time, because the case remains in screening status.

4. Neither the IDOC defendants nor their counsel need file anything at this time, since the claims against the IDOC defendants are derivative of claims against the medical providers.

5. Counsel for Defendants are requested to make a limited appearance for the purpose of providing a Martinez report and any other relevant records. The Martinez report should be filed within **120 days** after entry of this Order.

6. The Martinez report does not need to be in any particular format, but counsel can present the report in any organized manner that makes sense in response to the allegations of the Second Amended Complaint and this Order. Exhibits that implicate privacy or security concerns may be filed under seal or in camera, as may be appropriate. Exhibits filed in camera must be accompanied by a privilege or security log that is provided to Plaintiff.

DATED: October 27, 2021

B. Lynn Winmill
U.S. District Court Judge

**THIRD REVIEW ORDER - 8**

**THIRD REVIEW ORDER - 9**